RECEIVED JAN 3 0 2012

**U.S. Department of Justice**
Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2012 9474

950 Pennsylvania Avenue, N.W.
Karen Ferguson, EMP, PHB, Room 4239
Washington, DC 20530

January 26, 2012

Mr. Andrew D. Musila
c/o Joseph C. Korsak, Esquire
Mazza Law Group
Attorney at Law
3081 Enterprise Dr., Ste. 2
State College, PA  16801

Re: EEOC Charge Against Lock Haven University, et al.
    No. 17F201161719

Dear Mr. Musila:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                 Sincerely,

                                 Thomas E. Perez
                                 Assistant Attorney General
                                 Civil Rights Division

                           by    Karen L. Ferguson
                                 Supervisory Civil Rights Analyst
                                 Employment Litigation Section

cc: Philadelphia District Office, EEOC
    Lock Haven University, et al.


EXHIBIT 1

Article 43

INVESTIGATION OF COMPLAINTS AGAINST FACULTY MEMBERS

The STATE SYSTEM and APSCUF recognize that it may be necessary to investigate complaints against FACULTY MEMBERS prior to making a disciplinary decision. When appropriate, attempts should be made to resolve complaints informally. In those cases in which complaints are not resolved informally, the principles below shall apply:

A.   If the University determines to conduct an investigation of a complaint, either verbal or written, it shall be initiated and concluded within a reasonable amount of time. Absent unusual circumstances, the decision to conduct a formal investigation shall be made within twenty (20) days of receipt of the complaint.

B.   The FACULTY MEMBER accused of wrongdoing must receive a copy of the written complaint prior to the commencement of an investigatory interview or pre-disciplinary conference. In the event a written complaint is not submitted, the individual assigned to conduct the investigation shall prepare a written summary and provide a copy of the summary to the FACULTY MEMBER prior to commencing an investigatory interview or pre-disciplinary conference. The FACULTY MEMBER may provide APSCUF a copy of the written complaint or summary if he/she so desires. If the FACULTY MEMBER has obtained APSCUF representation and the FACULTY MEMBER has no objection, a copy of the complaint or the written summary shall be provided to APSCUF. Upon receipt of the complaint by the FACULTY MEMBER and/or APSCUF, it shall be treated as confidential by all parties and may only be shared with those persons necessary to prepare a response to the complaint.

C.   Upon request, a FACULTY MEMBER shall be entitled to an APSCUF representative during any meeting in which allegations are to be made, which the FACULTY MEMBER reasonably believes could lead to discipline.

D.   If the complainant is a student in the FACULTY MEMBER'S class, the investigation may be deferred and the complainant's name need not be disclosed until after submission of the final grade.

E.   If an investigation is expanded beyond its original scope, the FACULTY MEMBER shall be advised immediately. APSCUF shall also be advised if the FACULTY MEMBER has obtained APSCUF representation and has no objection.

F.   The FACULTY MEMBER accused of wrongdoing shall be advised that he/she is prohibited from taking retaliatory action against the complainant or any other person and that such action may result in a separate disciplinary action.

G.   This Article shall supplement and by no means shall diminish the rights of any FACULTY MEMBER, APSCUF, or the STATE SYSTEM/UNIVERSITIES under any law, including the Pennsylvania Public Employee Relations Act.


EXHIBIT 1

June 23, 2010

Dr. Andrew Musila
1407 Hepburn Street
Williamsport, PA 17701

Dear Dr. Musila:

This letter will serve as official notification that Lock Haven University will be conducting a fact-finding investigation in response to the allegations of inappropriate conduct and the creation of a hostile learning environment. Ms. Ashley Hopple, LHU Student, alleges that you exhibited this behavior towards her during the 2010 spring semester at LHU.

This investigation will follow the outlined process in accordance with Article 43 of the APSCUF collective bargaining agreement. You are directed to report to a fact-finding interview on **Tuesday, July 6th at 10:00am.** This interview will take place at East Campus in room J206. Enclosed is the written complaint for your review prior to this fact-finding interview.

During this investigation you are directed **NOT** to have any contact with the complainant (Ms. Hopple) or any witnesses except for required work related issues not relating to the allegations in this investigation. Your contact (email, verbal or written) with the complainants or any witnesses is to be strictly work-related and concerning matters of your department and LHUP academic business not related to the complaint. Failure to comply with this directive could result in a separate disciplinary action. Additionally, you are prohibited from taking any retaliatory action against the complainants or any other person(s) and such action may result in a separate disciplinary action.

You may wish to reference Article 43 of the APSCUF CBA for additional information regarding investigations of complaints against faculty members. You are entitled to union representation during this process.

As a Commonwealth employee, you are entitled to counseling benefits through the State Employees Assistance Program (SEAP). If you feel that this program would be of any benefit to you as you go through this process, please consider contacting them at your convenience.

Should you have any questions as to anything contained in this letter, do not hesitate to contact me.

Sincerely,

Mr. Albert W. Jones
Associate Director of Human Resources

Attachments – Formal Complaint from Ms. Ashley Hopple


EXHIBIT 3

I am a student in Dr. Musila's World Politics class. On the last week of finals I went to his office to discuss my grade. He offered for me to come to his office to retake a test. On Thursday May 6th he emailed me and asked me to come to his office at three o clock that afternoon. When I arrived at his office he was with another student, when he finished with her he called me into his office. I sat on his couch and he sat next to me he took my hand and held it and wouldn't let go. I began feeling uncomfortable. He finally let go and then he wanted a high five so I gave him one and then when I did that he took his other hand an aimed a punch to the side of my one breast. I couldn't tell if that was an accident or not. Another student came to see him then and I stepped out into the hall. During that time I began texting my friends Mike Garcia, Donnel Smith and Rose Frelich-Jones and was telling them that he is making me feel uncomfortable. When he was done with that student I went back into his office and he began a conversation about sex, saying that my ex-boyfriend and I were still having sex and that he was having sex with my best friend. After that conversation was over I started to take the test, he came over to me and started rubbing my back, I began to feel more uncomfortable and I continued to concentrate on the test. He kept saying that he liked me and that I couldn't tell anybody at all what was going on. He kissed me on the cheek and ear. He continued to rub my back and asked if my ex-boyfriend ever gave me a massage and I said yeah and he asked with oils and I said no why but he ended the question. He asked me if I was the best teacher he had and I mentioned this one teacher who I really like and he kept touching me constantly until I told him that he was the best. It was almost like he was competing against her and my ex-boyfriend. I finished the test quickly and said I had to go because I have diabetes and I have not eaten at all today, which was the truth, and he looked sad. He gave me a hug and wouldn't let go, I pulled away but he held me. He was so close that I thought he was going to kiss me. He said it was a pleasure to have me

in class and that I can never tell anyone about what happened here. I ran out of the office and out the door, I began to have an anxiety attack. When I got outside Rose was there waiting because she knew something was wrong. She got me away from Russell Hall and she calmed me down just enough so I can breathe on my own. I told her what happened and she called Mike and my dad who convinced me to go to Dr. Koch about this.

Ashley Hopple



# Department of Human Resources
## Lock Haven University of Pennsylvania

**HR Homepage**  570-484-2033   J205 East Campus   Lock Haven University   Lock Haven, PA 17745

## *Gender Discrimination/Sexual Harassment Policies and Procedures* (revised as of 1997)

### GENDER DISCRIMINATION/SEXUAL HARASSMENT POLICY STATEMENT

Lock Haven University is committed to providing a learning and working environment that enhances the dignity and worth of every member of its community. To this end, the community must be free from discriminatory conduct of any kind. Thus, because such conduct subverts the well-being of the college environment, abuse, discrimination or harassment of any individual will not be tolerated.

Gender discrimination/sexual harassment in any form is not only contrary to University policy but also morally reprehensible because it undermines the dignity of community members and often represents an unfair exploitation of power.

As a university, we take seriously our responsibility to educate all members of the community about the nature of gender discrimination/sexual harassment, its effects on both individual and communal well-being, and the steps necessary to combat it. Lock Haven University is committed to equality of opportunity and freedom from discrimination for all of its students, faculty and staff.

Gender discrimination/sexual harassment and all forms of sexual intimidation and exploitation are of concern to the University. Governed by Title IX of the Education Amendments of 1972 which prohibits sex discrimination in education, Title VII of the Civil Rights Act of 1964 which prohibits sex discrimination in employment, and the Pennsylvania Human Relations Act of 1955 (and their amendments), the University seeks to prevent and correct such actions. Gender discrimination/sexual harassment is unacceptable conduct and will not be tolerated in any context at Lock Haven University, whether it be in a faculty/student, faculty/faculty, supervisor/employee, student/student, worker/co-worker, or other relationship regardless
of the formal status of the persons involved. Individuals who engage in such behavior are subject to appropriate corrective action which, when warranted, may include termination of their relationship with the University. In addition, such persons may be held personally liable
to the target of such behavior and be subject to sanctions independent of those imposed by
the University.

Under Title IX, an individual is the victim of gender discrimination if he/she is, on the



basis of sex, excluded from participation in, denied the benefits of, or subjected to discrimination under any education program or activity operated by the University. In addition, under Title VII an employer commits gender discrimination if it (a) fails or refuses to hire, discharges, or otherwise discriminates against any individual with respect to his/her compensation, terms, conditions or privileges of employment, because of such individual's sex, or (b) limits, segregates or classifies its employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his/her status as an employee, because of such individual's sex.

Sexual harassment, which is a form of gender discrimination, occurs in a variety of situations which share a common element: the inappropriate introduction of sexual activities or sexual comments into the work or learning situation. Though not limited to the following circumstances, often sexual harassment involves relationships of unequal power and contains elements of coercion, for example suggestions that academic or employment reprisals or rewards will follow the refusal or granting of sexual favors. For purposes of this Policy, sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature occurring when:

1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, or of a student's academic status or treatment;

2. Submission to or rejection of such conduct by an individual is used as the basis for academic or employment decisions affecting such individual; or

3. Such conduct has the purpose or effect of unreasonably interfering with an individual's work or academic performance or creating an intimidating, hostile, or offensive working or academic environment to a reasonable person. *

Types of behavior which may constitute sexual harassment include, but are not limited to:

- Sexist, sexually suggestive or intimidating remarks or behavior;
- Inappropriate and offensive uninvited sexual advances;
- Solicitation of sexual activity or other sex-linked behavior by promise of reward;
- Coercion of sexual activity by threat of punishment;
- Sexual assault.

## *SUPERVISORY CAUTIONS*

Faculty and supervisors should be aware that amorous or sexual relationships with

students
or subordinate employees are strongly discouraged at Lock Haven University. Due to the inherently unequal nature of a relationship in which one party supervises, advises or evaluates the other, the apparent consensual status of an amorous relationship between such parties is suspect even when both parties have given voluntary consent. In such a situation, it is the ethical and professional responsibility of the person in the position of power to relinquish decisions regarding the subordinate and to remove him/herself from the supervisory role.

In sum, such relationships have the potential for adverse consequences, including the filing
of charges of sexual harassment, and thus any person in a supervisory capacity enters at peril into amorous or sexual relations with a subordinate.

## *PROCEDURES FOR RESPONDING TO GENDER DISCRIMINATION /SEXUAL HARASSMENT*

All parties involved must clearly understand that gender discrimination/sexual harassment is
not only a violation of University Policy, it is a violation of state and federal law. As a result, the complainant may proceed in one of three ways: (1) through the University procedure (described below), (2) through the legal system (state and federal agencies and/or the criminal justice system), or (3) through a combination of both. The complainant should inform the University if she/he intends to proceed through the legal system. Following the University procedure does not preclude pursuing the complaint through the legal system.

- This wording is consistent with applicable federal guidelines relating to sexual harassment.

The University policy seeks to encourage students and employees to express freely, responsibly, and in an orderly fashion their opinions and feelings about any problem or complaint of gender discrimination/sexual harassment. Deliberate or malicious false accusations of gender discrimination/sexual harassment will not be tolerated. However, any act by a student or University employee of reprisal, interference, restraint, penalty, discrimination, coercion, or harassment—overtly or covertly—against a student or employee for responsibly using this Policy and its Procedures may itself be a violation of the Policy subjecting the perpetrator to disciplinary action under this Policy if appropriate.

## *PROCEDURES FOR RESPONDING TO*
## *GENDER DISCRIMINATION/SEXUAL HARASSMENT:*

The University endorses a strong, widely disseminated and consistently enforced policy against gender discrimination/sexual harassment. As such, each University dean, director, department chairperson, search committee chairperson, administrator and supervisor is responsible within his/her area of jurisdiction for making appropriate referrals of complaints to the individuals identified in this policy. The University will annually publicize this policy in the Student Handbook; forward copies of it to all department chairpersons, deans, managers, and labor union leaders; and make

announcements of any new procedure(s) in the campus newspaper and other means of existing communication.

## THE UNIVERSITY PROCEDURE

Volunteers from the faculty and staff (representing bargaining units, including AFSCME and APSCUF) and student body will be recommended by their respective constituencies and appointed by the President or his/her designee to constitute:

- a seven-member Gender Discrimination/Sexual Harassment Board of Advisors

- a five-member Panel on Gender Discrimination/Sexual Harassment (in addition, the Panel will have a non-voting Chair as detailed below)

New members appointed to either group will undergo a mandatory training program, including sensitivity to issues of confidentiality as well as listening and communication skills, before assuming their responsibilities. Names of members of both groups will be publicized widely by the University. Members of both groups shall be recused from acting in a given matter when appropriate for conflict-of-interest or prejudice.

A. Gender Discrimination/Sexual Harassment Board of Advisors

- Membership on the Board of Advisors should include faculty, staff, and students, and should represent bargaining units including AFSCME and APSCUF. The terms of membership will be as follows: three members of the Board will accept an initial three-year term; the remaining four members will accept a two-year term; thereafter, the term of membership will be two years. The tasks of the Board will be as follows:

    *1.* to implement a program to educate the campus about sexual harassment;

    *2.* to ensure that the institution's policy and procedures are widely publicized;

    *3.* to offer informal consultation and information to employees or students of the University who believe they have been sexually harassed or discriminated against because of their gender;

    *4.* to outline procedures that might be employed against an alleged harasser or alleged discriminator if the employee or student does not wish to institute a formal complaint.

### B. Panel on Gender Discrimination/Sexual Harassment

The Director of Social Equity, or his/her designee in cases of conflict-of-interest, will act as the non-voting Chair of the Panel. The membership of the Panel should include faculty, staff, and students, and should represent bargaining units, including AFSCME and APSCUF. The terms of membership will be as follows: two members of the Panel

will accept an initial three-year term; the remaining three members will accept a two-year term; thereafter the term of membership will be two years. The task of the Panel will be to review and investigate gender discrimination/sexual harassment complaints at the formal level, and to make findings of fact and report to the President concerning such complaints.

### C. Procedure

Complaints will be heard in compliance with the following procedures:

*Informal Process:*

Employees or students of the University who believe they have been sexually harassed or discriminated against because of their gender ("the complainant") may approach a member of the Gender Discrimination/Sexual Harassment Board of Advisors. Tasks of the Advisor will only involve offering consultation, information and attempted informal resolution. In attempting to achieve an informal resolution, the Advisor should act neutrally. The Advisor will immediately notify the Director of Social Equity as soon as he or she is approached by a complainant. The Advisor will hear the complaint, provide needed information (including channels both inside and outside the university through which complaints may be filed), and attempt to resolve the problem by informal means. Any informal resolution will be voluntary for both complainant and the respondent. Under this informal process, the University will impose no involuntary sanctions or discipline. Once the informal processing of a complaint is completed, all informal notes and records relative thereto, if any, are to be kept centrally and confidentially in the Office of the Director of Social Equity.

*Formal Process:*

If the informal process seems inappropriate, or if no formal resolution can be achieved, the complainant may formulate the complaint in writing and contact the Chair of the Gender Discrimination/Sexual Harassment Panel (who is also the Director of Social Equity) to file a formal complaint. Panel members meeting as a whole will then review and investigate the complaint, interviewing both parties to it, as well as any relevant witnesses or persons having knowledge of the situation. The Panel may meet as frequently as necessary to complete the investigation. Individual members of the panel will not conduct the investigation separately. Instead, the investigation will be performed by the Panel together as a whole. All interviews, meetings, telephone calls and other activities relating to the complaint will be carefully documented and clearly dated by the Panel. Complainants may be requested by the Panel, but not required, to face the respondent in a fact-finding meeting. Furthermore, neither a complainant nor a respondent may be compelled to attend a fact-finding meeting, though such meetings can be held in their absence if they choose not to attend and a determination made on the basis of the evidence before the Panel. During this process both the complainant and the respondent may be accompanied by an advocate whose role will be advisory only; advocate will not address the Panel directly. The fact-finding process is intended to be an investigation, not a adjudication, and the strict rules of evidence and criminal or civil procedure applicable in the external legal system do not apply.

After the Panel has declared that the investigation is complete, the Panel will prepare a

written report which shall include the following:

    a. A statement of the findings of fact;

    b. A statement of the conclusions, if any, which the Panel has drawn;

    c. Any other relevant information deemed appropriate to the findings of fact.

The report will be completed and sent to the University President, or his/her designee in cases of conflict-of-interest, within fourteen working days of the conclusion of the Panel's investigation. If the Panel does not reach a consensus, the report to the President should state that fact. In that event, a minority as well as majority report may be submitted.

Upon receiving the report form the Panel, the President will review it and determine a resolution. The final decision as to the outcome of the investigation and what, if any, action to be taken shall be the President's. The President shall have absolute discretion to accept or reject the findings and/or conclusions in the report in whole or in part, and shall have the authority to seek additional information as she/he deems appropriate. Any resolution by the President will be determined after she/he has conducted any required pre-disciplinary hearing(s). If the decision goes against the respondent, the President may take disciplinary action against him or her. Possible sanctions include, but are not limited to, written or oral reprimand, demotion, suspension or leave of absence without pay, temporary or permanent debarment from university functions, activities and memberships, or termination from the University. The President will inform the complainant and the respondent of his/her decision in writing within thirty working days of receipt of the Panel's report. Full disclosure of the President's decision will be given to the complainant, including any resulting disciplinary action. All such disclosed information is to be kept confidential by both parties. The decision of the President shall be final within the University.

All records of the formal process (including the complaint, records of the Panel's hearings, the report to the President and the President's decision) will be secured in the Office of the Director of Social Equity. In the event that the President takes disciplinary action against the respondent, a copy of the President's decision shall be placed in the respondent's personnel file, in accordance with the terms of any applicable Collective Bargaining Agreement.

At the end of each academic year, statistics concerning the number of sexual harassment complaints filed and a general description of dispositions (preserving the confidentiality of the parties involved and not including any personally identifiable information) will be made public by the Director of Social Equity.

**Confidentiality**

Because of the University's commitment to a discrimination-free environment, the resolution
of the complaint will involve a thorough investigation and appropriate actions as indicated by the results of that investigation. Although every effort will be made to protect the identity of the complainant during the investigation, sometimes that is not

possible.

During informal resolution, all reasonable efforts will be made to ensure the confidentiality
of information received, including the identities of the parties. Since no sanctions will be recommended or imposed on the accused in the informal resolution stage, the identity of the complainant will be disclosed to the accused only if the complainant gives permission. If,
due to the circumstances of the alleged harassment, it is not possible to conduct a review of,
or resolve, the complaint and at the same time maintain confidentiality, the complainant will be informed and will be given the option of proceeding or withdrawing from the process. During formal investigation the identity of the complainant will be made known to the accused party; every reasonable effort will be made to protect the privacy rights of all parties, but confidentiality cannot be guaranteed.

**Timeline**

Time constraints will go into effect beginning with the filing of the formal complaint, which must be filed **within 180 days** (including weekends and summer) of the alleged discrimination or harassing incident. Upon the filing of a formal written complaint by the complainant with the Chair of the Panel (Director of Social Equity), the Panel will have a **maximum of 30 working days** to complete investigation of the complaint. The Panel's report will be sent to the President or his/her designee **within 14 working days** after the investigation has been declared closed by the Panel. **Within 30 working days** from the receipt of the Panel's report, the President will review the complaint and determine a resolution; copies of his/her determination will sent to both parties. These time frames may be extended through mutual agreement of the University (acting by the Director of Social Equity), the complainant and the respondent. The University (acting by the Director of Social Equity) may also unilaterally extend any stage of the proceedings for good cause for up to 30 days beyond the time frames specified herein. Such a unilateral extension may occur no more than twice in the processing of any given complaint.

Working days shall be defined for these purposes as weekdays (excluding weekends and holidays, but including the summer).

The complainant should be aware that if she/he intends to file a complaint outside the University with the Office of Civil Rights or the Pennsylvania Human Relations Board, such complaint must be filed **within 180 days** (including weekends and summer) of the alleged discrimination or harassing incident.

Last Updated 09/08/2009

## Law Office of Joseph C. Korsak

**From:** andrew musila [admusila@hotmail.com]
**Sent:** Friday, July 23, 2010 3:57 PM
**To:** joseph korsak
**Subject:** FW:
**Attachments:** Dr. erickson.docx; _Certification_.txt

> From: amusila@lhup.edu
> To: admusila@hotmail.com
> Date: Fri, 23 Jul 2010 15:50:33 -0400
> Subject: FW:
>
>
> _____
> From: Musila, Andrew D.
> Sent: Friday, July 02, 2010 12:25 PM
> To: Erickson, Deborah B
> Subject:
>
> Dear Dr. Erickson,
> I am writing to ask that both Mr. Albert Jones, Ms. Deana Hill have absolutely nothing to do with any on-going investigation against me. A copy of this letter will be provided to APSCUF and the Grievance Committee Chair. I received a copy of your letter to Mr. Jones, dated May 25th, noting that there was a complaint against me by Ms. Ashley Hopple. My history with both Mr. Jones and Ms. Hill, leads me to ask that they never be anywhere close to where I am a subject of investigation. This request also applies to the Office of Student Affairs. I make this request based on information I have received from my students.
> I am away for the rest of the summer. I teach, every summer at Yale's and Princeton's JSA program. Many people at LHU, including Dean Hill know this. Ms Hill specifically asked me about my summer plans during Dr. Miller's goodbye reception. I am not available for any investigations until fall 2010. I am distressed at the delay in handling this issue. Why did it take this long? As you know, I taught summer 1 from May 18 till June 21 (the date I submitted my student grades). I was available all this time and beyond. My Princeton teaching begins July 5 and ends August 8, and then I proceed on vacation with family.
> Sincerely,
> Andrew D. Musila, Ph.D.

The New Busy is not the too busy. Combine all your e-mail accounts with Hotmail. Get busy.



7/23/2010

Dear Dr. Erickson,

I am writing to ask that both Mr. Albert Jones, Ms. Deana Hill have absolutely nothing to do with any on-going investigation against me. A copy of this letter will be provided to APSCUF and the Grievance Committee Chair. I received a copy of your letter to Mr. Jones, dated May 25th, noting that there was a complaint against me by Ms. Ashley Hopple. My history with both Mr. Jones and Ms. Hill, leads me to ask that they never be anywhere close to where I am a subject of investigation. This request also applies to the Office of Student Affairs. I make this request based on information I have received from my students.

I am away for the rest of the summer. I teach, every summer at Yale's and Princeton's JSA program. Many people at LHU, including Dean Hill know this. Ms Hill specifically asked me about my summer plans during Dr. Miller's goodbye reception. I am not available for any investigations until fall 2010. I am distressed at the delay in handling this issue. Why did it take this long? As you know, I taught summer 1 from May 18 till June 21 (the date I submitted my student grades). I was available all this time and beyond. My Princeton teaching begins July 5 and ends August 8, and then I proceed on vacation with family.

Sincerely,

Andrew D. Musila, Ph.D.

## Law Office of Joseph C. Korsak

**From:** Joseph C Korsak [korsak@mazzalaw.com]
**Sent:** Monday, August 02, 2010 2:39 PM
**To:** bbdixon@lhup.edu
**Cc:** bmay@lhup.edu; admusila@hotmail.com; josephkorsak@comcast.net
**Subject:** Dr. A. Musila
**Attachments:** _Certification_.txt

Dear Dr. Dixon:

Please excuse the informality of e-mail. Unfortunately, time does not permit the use of the Postal Service.

I have been retained to defend Dr. Musila with respect to what we believe are unsubstantiated accusations by one of his former students. Mr. Jones and Ms. Hill are taking an active part in the investigation and are believed to be in attendance at the conference Wednesday at 1:30 PM.

I wanted to put you on notice, as President of the University, that there is a pending grievance by my client against both of these individuals. I understand that the Provost has been alerted to this but has decided not to take any action. This strikes me as a totally unacceptable conflict of interest which the University should not tolerate. I have run into this too many times where those involved in the appellate process (in court, administrative, or otherwise), like upset judges, wonder why the process would be moved forward by anyone who might have an axe to grind with the grievant.

All I ask is that Dr. Musila get an impartial hearing from his peers. That can't happen unless these inappropriate persons are removed from the review process.

Very truly yours,

/s/
Joseph C. Korsak

Joseph C. Korsak
Of Counsel

The Mazza Law Group, P.C.
3081 Enterprise Drive, Suite 2
State College, PA 16801
Phone: (814) 237-6255
Fax:    (814) 237-5752

Your lawyers, your neighbors, your friends™
visit us on the web: http://www.mazzalaw.com

This electronic mail transmission is privileged and confidential, and is intended only for the review of the party to whom it is intended to be sent. If you have received this message in error, please immediately return it to the sender with a notation of "Wrong Address" in the subject line. Unintended transmission to a wrong address shall not constitute waiver of the attorney-client or any other privileges.

Barbara B. Dixon  
Interim President  
202 Sullivan Hall  
Lock Haven University  
Lock Haven, PA 17745



Office: 570.484.2000  
Fax: 570.484.2432  
bbdixon@lhup.edu  
www.lhup.edu

# LOCK HAVEN
## UNIVERSITY

October 12, 2010

Dr. Andrew Musila  
1407 Hepburn Street  
Williamsport, PA 17701

Dear Dr. Musila:

The University has completed the fact-finding portion of an investigation initiated by a formal complaint filed by Ms. Ashley Hopple alleging inappropriate conduct and creation of a hostile learning environment. A Pre-Disciplinary Conference (PDC) was held Monday, September 20, 2010, which you attended and participated with your APSCUF Union Representative.

This letter will serve as a written reprimand for your inappropriate behavior with a student. Specifically, there is sufficient evidence to support the student's complaint. I find that her complaint is credible and that you:

(1) had inappropriate physical contact with the student which included holding her hand, kissing her cheek and ear, rubbing her back, hugging her, and punching her breast;

(2) had inappropriate conversation about her sexual encounters; and

(3) advised the student not to inform anyone about the encounter in your office on May 6, 2010 between you and her.

Standing alone, either of my first two conclusions about your conduct would warrant the discipline as levied.

This letter will be placed in your official personnel file and remain there for six years.

Recently, in April 2008 and then again August 2008, you were advised about how to interact with students to avoid allegations, such as the one you are facing in this matter. I find that you did not heed the guidance, about your approach to interacting with students, which you received from both the prior University Provost and President, respectively.

Be advised that the University expects your behavior with students to be professional at all times. The University expects immediate correction to all interactions with students that are not on a professional level. Should behavior of this same or similar nature continue, disciplinary action could be taken, up to and including termination.

Be further advised you are prohibited from taking any retaliatory action against the complainant or any other person involved in this matter and such action may result in a separate disciplinary action.

Sincerely,

Barbara B. Dixon  
President

xc: Dr. Deborah Erickson, Provost  
Dr. Mark Cloud, LHU APSCUF President

EXHIBIT 6



| | |
|---|---|
| BLOOMSBURG CALIFORNIA CHEYNEY CLARION EAST STROUDSBURG | |
| EDINBORO INDIANA KUTZTOWN LOCK HAVEN MANSFIELD | |
| MILLERSVILLE SHIPPENSBURG SLIPPERY ROCK WEST CHESTER | |

May 3, 2011

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Professor Andrew Musila
1407 Hepburn Street
Williamsport, PA 17701

Re: Professor Andrew Musila – Investigation of Complaints
    Lock Haven University (Local #10-003LH)
    APSCUF #2010-002LH

    Professor Andrew Musila - Discipline
    Lock Haven University (Local #10-005LH)
    APSCUF #2010-003LH

    Professor Andrew Musila – Fair Practices
    Lock Haven University (Local #10-006LH)
    APSCUF #2010-004LH

    Professor Andrew Musila – Investigations
    Lock Haven University (Local #10-007LH)
    APSCUF #2010-005LH

    Professor Andrew Musila – Fair Practices
    Lock Haven University (Local #10-010LH)
    APSCUF #2011-002LH

Dear Professor Musila:

This is to inform you that after a full review at its April 30, 2011, meeting, the Statewide Grievance Committee voted to withdraw APSCUF #2010-002LH and APSCUF #2020-003LH from arbitration and accept settlement of all grievances listed above. A signed copy of the settlement is enclosed.

Please advise this office when you have received the monetary portion of the settlement. If I do not



319 N. Front Street, P.O. Box 11995, Harrisburg, PA 17108
P (717) 236-7486  TF (800) 932-0587  F (717) 236-1883
www.apscuf.org



EXHIBIT
M

Ms. Sara Craft, Assistant Director, Contract Department
May 2, 2011
Page 2

2. The written reprimand of October 12, 2010, issued to the grievant shall be removed from his official personnel file as having served its purpose on January 22, 2013, provided he has no intervening related incidences of the same of similar nature by said date.

3. This settlement will resolve all issues in the above referenced grievances.

4. This settlement shall not serve as precedent or prejudice the rights of either party in any future or pending matter.

Please signify your concurrence with the above stated terms by signing below and returning a copy to this office.

Sincerely,

*Jamie K Shipe*

Jamie K. Shipe
Relationship Manager-Labor Relations

JKS/tlh

c:  Deborah Erickson, Provost and Vice President for Academic Affairs
    Michael Mottola, Assistant Vice Chancellor for Labor Relations
    Deana Hill, Director of Human Resources


*Sara Craft*                    5/3/2011
Sara Craft                       Date
On behalf of APSCUF



Office of the Chancellor | Dixon University Center | 2986 North Second Street | Harrisburg, PA 17110-1201
717-720-4000 | www.passhe.edu

May 2, 2011

Ms. Sara Craft
Assistant Director, Contract Department
Association of Pennsylvania State College and University Faculties
319 North Front Street
Harrisburg, PA 17101

Re: PASSHE #2010-LH-101-F
Professor Andrew Musila—Investigation of Complaints
Lock Haven University of Pennsylvania (Local #10-003LH)
APSCUF #2010-002LH

PASSHE #2010-LH-104-F
Professor Andrew Musila—Discipline
Lock Haven University of Pennsylvania (Local #10-005LH)
APSCUF #2010-003LH

PASSHE #2010-LH-105-F
Professor Andrew Musila—Investigations
Lock Haven University of Pennsylvania (Local #10-007LH)
APSCUF #2010-005LH

PASSHE #2010-LH-107-F
Professor Andrew Musila—Fair Practices
Lock Haven University of Pennsylvania (Local #10-006LH)
APSCUF #2010-004LH

PASSHE #2011-LH-001-F
Professor Andrew Musila—Fair Practices
Lock Haven University of Pennsylvania (Local #10-010LH)
APSCUF #2011-002LH

Dear Ms. Craft:

The parties, the Association of Pennsylvania State College and University Faculties (APCUF) and the Pennsylvania State System of Higher Education, agree to the following as full and complete resolution of the above referenced grievances:

1. The grievant, Andrew Musila, shall be compensated $105.50 for mileage reimbursement.

Professor Andrew Musila
APSCUF #2010-002LH; 2010-003LH; 2010-004LH; 2010-005LH; 2011-002LH
May 3, 2011
Page 2

hear from you by July 1, 2011, I will assume payment has been received and our files will be closed. Thank you for your attention to this matter.

Sincerely,

*Sara E. Craft*
Sara E. Craft
Assistant Director
Contract Department

SEC:jmt

Enclosure

cc w/enclosure: Professor Brent May

T:\tmw9\data\files\Musila, Andrew\Musila, Andrew2010-002LHAcceptance of Settlement Letter to Grievant.DOCX